IN RE J.J.

[Cite as *In re J.J.,* 111 Ohio St.3d 205, 2006-Ohio-5484.]

(No. 2006–0064—Submitted May 24, 2006—Decided November 8, 2006.)

O'DONNELL, J.

{¶ 1} The Cuyahoga County Department of Children and Family Services appeals from a decision of the Eighth District Court of Appeals that held that a magistrate's assignment of this permanent-custody case to a visiting judge rendered the subsequent proceedings void.

{¶ 2} The record before us reveals that on August 31, 2000, Shannon Jeffi gave birth to J.J., the minor child who is the subject of this permanent-custody dispute. Upon his release from the hospital five weeks later, the Department of Children and Family Services placed J.J. with his foster mother, Sharon Snyder. In August 2002, the court awarded custody of J.J. to Donald Murphy, his biological father, after he completed parenting seminars and a drug rehabilitation program.

{¶ 3} On October 24, 2003, as Murphy drove to pick up J.J. from a day-care program, a Cleveland police officer stopped him and arrested him for driving with a suspended license and for possession of cocaine.

{¶ 4} Consequently, the department filed a complaint for neglect in the juvenile court, seeking temporary and permanent custody of J.J. and requesting that the court immediately remove J.J. from Murphy's custody. The juvenile court magistrate held a hearing and granted the department's motion for predispositional temporary custody. Pursuant to that order, Snyder assumed foster care of J.J., pending the resolution of the department's complaint for permanent custody.

{¶ 5} The magistrate then transferred the matter to a visiting judge for further proceedings. Following that transfer, several visiting judges presided over different hearings in the case. Judge John T. Patton entered an arraignment order on December 9, 2003, and Judge Joseph J. Nahra presided over a hearing on January 23, 2004, in which the department amended its original complaint to include additional allegations regarding Murphy's prior drug use. Murphy objected neither to the magistrate's transfer order nor to the jurisdiction of a visiting judge at any subsequent hearing.

{¶ 6} The case then proceeded to trial before another visiting judge, Judge Judith A. Cross, who, following trial, awarded permanent custody of J.J. to the Department of Children and Family Services. Although he never objected to Judge Cross's jurisdiction or assignment at trial, on appeal, Murphy argued for the first time that the magistrate lacked authority to transfer cases to visiting judges, that the judges lacked subject-matter jurisdiction, and that all subsequent proceedings and the court's judgment became void ab initio. The Eighth District agreed and held the juvenile court's judgment void for lack of jurisdiction. We granted discretionary review. Based on the following, we reverse the judgment of the court of appeals.

{¶ 7} The issue presented in this case concerns whether the magistrate's transfer of the case to a visiting judge divested the juvenile court of subject-

matter jurisdiction and rendered the subsequent proceedings void or whether that order constituted a procedural irregularity rendering the final judgment voidable.

{¶ 8} The department contends that the magistrate's order is a procedural irregularity that does not affect the subject-matter jurisdiction of the juvenile court and does not alter the authority of a visiting judge to decide cases absent a timely objection.

{¶ 9} Murphy argues that Sup.R. 4(B) provides that only the administrative judge may assign cases to a visiting judge, and, therefore, the visiting judges lacked subject-matter jurisdiction to render judgment.

### Subject–Matter Jurisdiction Compared with Jurisdiction over the Particular Case

{¶ 10} In *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, we analyzed two distinct forms of jurisdiction: subject-matter jurisdiction and jurisdiction over the particular case. Id. at ¶ 12. Distinguishing between these concepts is important because " ' "[i]t is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable." ' " Id., quoting *State v. Parker,* 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting), quoting *State v. Swiger* (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. We begin by analyzing these two forms of jurisdiction.

{¶ 11} Subject-matter jurisdiction "connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 87, 61 O.O.2d 335, 290 N.E.2d 841. The General Assembly established the jurisdiction of juvenile courts and, in R.C. 2151.23(A)(1), granted them exclusive, original jurisdiction concerning matters involving a neglected or dependent child. This action, therefore, involving the permanent custody of J.J. following a complaint alleging neglect is within the subject-matter jurisdiction of the juvenile court as specified in R.C. 2151.23(A)(1).

{¶ 12} "Jurisdiction over the particular case," as the term implies, involves " ' "the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction." ' " *Pratts,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 12, quoting *Swiger,* 125 Ohio App.3d at 462, 708 N.E.2d 1033. In that case, Pratts pleaded guilty to aggravated murder with death-penalty and firearm specifications. Id. at ¶ 2. At the sentencing hearing, he waived his right to a jury trial and agreed to submit his plea to a single judge, despite the requirement of R.C. 2945.06 that capital offenses "be tried by a court to be composed of three judges." Id. Pratts failed to appeal the single judge's findings, but sought relief through an action in habeas corpus, contending that

the trial court's failure to comply with R.C. 2945.06 divested it of subject-matter jurisdiction and rendered its judgment void. Id. at ¶ 3–4. We rejected that argument, holding that "[t]he failure of the court to convene a three-judge panel, as required by R.C. 2945.06, does not constitute a lack of subject-matter jurisdiction that renders the trial court's judgment void ab initio * * *." Id. at ¶ 36. The trial court's error, however, did make the judgment voidable and permitted Pratts to challenge the decision on direct appeal. Id. at ¶ 35. Having failed to preserve the error and argue the issue on appeal, Pratts waived that irregularity. Id.

{¶ 13} Similarly, in *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, in which Thomas elected to have a three-judge panel decide his sentence pursuant to R.C. 2945.06, the panel assigned an evidentiary issue to a visiting judge, reasoning that the victim-impact statements "would taint any members of the Panel or the entire Panel." Id. at ¶ 53. In our analysis, we first noted that R.C. 2945.06 does not authorize a panel to request a visiting judge to rule on the admissibility of victim-impact statements, id. at ¶ 56, but we nonetheless held that "the improper referral of an evidentiary matter to another judge did not go to the jurisdiction of the court or render the judgment void," id. at ¶ 58. As in *Pratts*, Thomas had failed to preserve the error at the trial level and had therefore waived all but plain error. Id.

{¶ 14} Also, in *Ex Parte Strang* (1871), 21 Ohio St. 610, Strang challenged, by a petition for a writ of habeas corpus, the validity of a judgment rendered by a judge whom the mayor of Cincinnati had appointed because of an elected judge's illness. We affirmed the denial of an order for Strang's discharge, noting that "the question raised is not an inquiry into the jurisdiction of the court, but an inquiry into the right of the judge to hold the office, which is a question entirely distinct from that of the jurisdiction of the court over the offense." Id. at 616. There, we held the appointed attorney to be a de facto judicial officer and stated, "To constitute an officer *de facto* of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint * * *." Id., paragraph two of the syllabus. Moreover, "[t]he acts of an officer *de facto*, when questioned collaterally, are as binding as those of an officer *de jure*." Id., paragraph one of the syllabus.

{¶ 15} These cases establish the duty of a complaining party seeking review to object in the trial court and timely preserve the error for appeal and the distinction between subject-matter jurisdiction and jurisdiction over the particular case. In a court that possesses subject-matter jurisdiction, procedural irregularities in the transfer of a case to a visiting judge affect the court's jurisdiction over the particular case and render the judgment voidable, not void.

## The Transfer Order

{¶ 16} Sup.R. 4(B) authorizes the administrative judge to "assign cases to individual judges of the court or division [and to] * * * * [r]equest, as necessary, the assignment of judges to the court or division." Juv.R. 40 does not extend this power of assignment to magistrates, and even the department concedes that the magistrate erred by signing the transfer order. This error, however, does not affect the subject-matter jurisdiction of the juvenile court over neglect and custody hearings. This case, like *Pratts* and *Strang*, is "not an inquiry into the jurisdiction of the court, but an inquiry into the right of the judge to hold the office." *Strang*, 21 Ohio St. at 616. Therefore, the magistrate's order, although erroneous, did not divest the juvenile court of jurisdiction; further, because Murphy failed to object at any time during any of the proceedings, he has not properly preserved the error and has waived it for purposes of appellate review.

## En Banc Procedures within Appellate Districts

{¶ 17} Further confusing the issue presented in this case is the fact that the Eighth District Court of Appeals issued two separate opinions in two different cases on this issue on the same day, with separate panels of the Eighth District Court of Appeals each reaching a different result. See *In re J.L.*, Cuyahoga App. Nos. 85668–85670, 2005-Ohio-6125, 2005 WL 3081535. *In re J.L.* held that J.L.'s father waived the procedural irregularity by not objecting to the transfer order during the proceedings in the trial court. The court in *J.L.* reasoned that though the magistrate did not have authority to transfer the case to the visiting judge docket, " '[a] delegation of judicial authority under color of right may allow the person to whom the judicial authority is transferred to act as a de facto judge, even if the delegation of authority is defective.' " Id. at ¶ 43, quoting *Cangemi v. Cangemi*, Cuyahoga App. No. 84678, 2005-Ohio-772, 2005 WL 433529, at ¶ 25. That holding, unlike the one in the instant case, comports with our precedent because it recognizes that the magistrate's order, though improper, granted the visiting judge authority as a de facto officer to preside over the case. A party may timely object to the authority of a visiting judge on the basis of an improper case transfer or assignment, but failure to timely enter such an objection waives the procedural error.

{¶ 18} The procedure for certified conflicts does not apply to conflicts within an appellate district, Section 3(B)(4), Article IV, Ohio Constitution, and such conflicts should be resolved through en banc proceedings. See, e.g., *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 613 N.E.2d 1032 (dismissing an appeal pursuant to an Eighth District order certifying a conflict for review and noting that "[f]or certification to be proper, there must be conflicting decisions *between districts* on a rule of law" [emphasis sic] ). The Eighth District's conflicting rulings on the same legal issue create confusion for lawyers and litigants and do

not promote public confidence in the judiciary. Appellate courts are duty-bound to resolve conflicts within the district through en banc proceedings.

{¶ 19} In *Eisenberg v. Peyton* (1978), 56 Ohio App.2d 144, 10 O.O.3d 158, 381 N.E.2d 1136, the Eighth District Court of Appeals used en banc proceedings in a case involving an improper procedure regarding a referee. There, the court stated: "Although the trial court may commit error by not fully complying with the procedural requirements of Civil Rule 53, that failure does not affect the jurisdiction of the trial court to hear and determine the action." Id. at 148, 10 O.O.3d 158, 381 N.E.2d 1136. Thus, as in this case, the procedural error did not affect the trial court's subject-matter jurisdiction.

{¶ 20} The en banc proceedings in *Eisenberg* permitted the court "to state clearly [its] position on the applicability of Civil Rule 53, * * * to indicate the lack of any effect on previous judgments which have not been appealed for a failure to fully comply with Civil Rule 53," and "to review its pronouncements on the subject and reach a common policy conclusion." Id. at 145, 10 O.O.3d 158, 381 N.E.2d 1136. This reasoning comports with Article 8(b)(ii) of the Eighth District's Standing Resolution of the Rules for the Conducting of Court Work and supports our directive that appellate courts should resolve conflicts within their respective appellate districts.

## Conclusion

{¶ 21} Based on the foregoing, the judgment is reversed, and the matter is remanded to the court of appeals for consideration of assignments of error that it originally declared moot.

Judgment reversed
and cause remanded.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

LANZINGER, J., concurs in judgment only.

---

William D. Mason and Joseph C. Young, for appellant Cuyahoga County Department of Children and Family Services.

John H. Lawson, for appellee Don Murphy.