McFADDEN, APPELLANT, *v.* CLEVELAND STATE UNIVERSITY, APPELLEE.

[Cite as *McFadden v. Cleveland State Univ.,*
120 Ohio St.3d 54, 2008-Ohio-4914.]

(No. 2007-0705—Submitted April 23, 2008—Decided October 2, 2008.)

MOYER, C.J.

## I

{¶ 1} This appeal presents two issues for our consideration: (1) whether en banc proceedings in a court of appeals violate Section 3(A), Article IV of the Ohio Constitution and (2) if they do not violate the Constitution, whether a court of appeals errs by refusing to convene en banc to resolve an intradistrict conflict in two or more opinions rendered by the court. For the following reasons, we hold that en banc proceedings are constitutional and that courts of appeals have discretion to determine whether an intradistrict conflict warranting en banc review exists. Because the court of appeals held that en banc proceedings are unconstitutional and did not formally deny such review, we remand this case to the court of appeals so that the court may determine whether en banc proceedings are appropriate in this case.

## II

{¶ 2} Plaintiff-appellant, Kenneth D. McFadden, began working for defendant-appellee Cleveland State University in 1998 as a coordinator of sales, marketing, and promotions in the athletic department. On June 11, 2003, the university terminated his employment.

{¶ 3} McFadden filed a complaint in the Court of Claims on January 30, 2006, alleging that the university had fired him because of his race. The university moved to dismiss the complaint or, alternatively, for summary judgment, arguing that McFadden failed to file his complaint within the two-year statute of limitations for such claims in R.C. 2743.16(A). The Court of Claims granted summary judgment to the university, finding that the statute of limitations barred the claim.

{¶ 4} McFadden appealed, arguing that a six-year statute of limitations applied to his claims, citing for support an unreported decision from the Court of Appeals for Franklin County, *Senegal v. Ohio Dept. of Rehab. & Corr.* (Mar. 10, 1994), Franklin App. No. 93API08–1161, 1994 WL 73895. *Senegal* held that the six-year statute of limitations in R.C. 4101.17 governs employment-discrimination claims against the state. Id. at *3.

{¶ 5} However, in a subsequent decision, the court of appeals called *Senegal* "an aberration" that "does not represent existing law on this court's application of the Court of Claims Act's statute of limitations." *McCoy v. Toledo Corr. Inst.*, Franklin App. No. 04AP–1098, 2005-Ohio-1848, 2005 WL 914664, ¶ 10. *McCoy* held that the two-year statute of limitations in R.C. 2743.16(A) applied to discrimination claims against the state. Id. at ¶ 6–7. Because this decision was

announced on April 21, 2005, McFadden had approximately seven weeks from the date of the decision to file a claim within the two-year limitations period.

{¶ 6} The court of appeals relied on *McCoy* to affirm the judgment of the Court of Claims. "We believe *McCoy* more accurately reflects the law applicable to appellant's claim. Therefore, we reiterate the holding from *McCoy* that the two-year statute of limitations in R.C. 2743.16 applies to claims such as appellant's that seek monetary damages for discrimination against the state. To the extent that we did not explicitly overrule *Senegal* in our decision in *McCoy*, we do so now." *McFadden v. Cleveland State Univ.*, Franklin App. No. 06AP–638, 2007-Ohio-298, 2007 WL 184828, ¶ 10 ("*McFadden I* ").

{¶ 7} McFadden filed an application for reconsideration. He argued that the court of appeals decision was invalid because it resolved an intradistrict conflict without an en banc proceeding. McFadden cited *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, paragraph two of the syllabus, wherein we stated, "Appellate courts are duty-bound to resolve conflicts within their respective appellate districts through en banc proceedings."

{¶ 8} The court of appeals denied McFadden's application for reconsideration. It held that en banc proceedings violated Section 3(A), Article IV of the Ohio Constitution. *McFadden v. Cleveland State Univ.*, 170 Ohio App.3d 142, 2007-Ohio-939, 866 N.E.2d 82, ¶ 8 ("*McFadden II* "). The court also attempted to distinguish these circumstances from those in *In re J.J.* by noting the difference in time between conflicting decisions (the conflicting decisions in *In re J.J.* were released on the same day, but over 11 years had elapsed between *Senegal* and *McCoy* ) and suggested that an en banc proceeding would be moot in this case because five of the eight judges in the district had already ruled in favor of a two-year statute of limitations. Id. at ¶ 9–10.

{¶ 9} We accepted McFadden's discretionary appeal from the denial of his application for reconsideration. 115 Ohio St.3d 1445, 2007-Ohio-5567, 875 N.E.2d 104.

## III

{¶ 10} This case presents the issue of whether en banc proceedings are constitutional. En banc is defined as "[w]ith all judges present and participating; in full court." Black's Law Dictionary (8th Ed.2004) 568. In an en banc proceeding, all appellate judges in a specific district convene to resolve an intradistrict conflict on a point of law so that the disputed issue may be conclusively settled in that district. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 20. En banc proceedings are well established in American jurisprudence; the United States Supreme Court has recognized and approved of them in the federal system, and at least 19 other states use some

form of en banc review. See *Textile Mills Securities Corp. v. Commr. of Internal Revenue* (1941), 314 U.S. 326, 333–335, 62 S.Ct. 272, 86 L.Ed. 249; John B. Oakley, Comparative Analysis of Alternative Plans for the Divisional Organization of the Ninth Circuit (2000–2001), 34 U.C.Davis L.Rev. 483, 538–540. As stated previously, en banc proceedings are established in Ohio as well: "Appellate courts are duty-bound to resolve conflicts within their respective appellate districts through en banc proceedings." *In re J.J.* at paragraph two of the syllabus.

{¶ 11} The court of appeals nonetheless refused to convene en banc to resolve the statute of limitations issue in this case, holding that such proceedings violate Section 3(A), Article IV of the Ohio Constitution. *McFadden II*, 170 Ohio App.3d 142, 2007-Ohio-939, 866 N.E.2d 82, ¶ 8.

{¶ 12} Section 3(A), Article IV of the Ohio Constitution states: "The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. Laws may be passed increasing the number of judges in any district wherein the volume of business may require such additional judge or judges. In districts having additional judges, three judges shall participate in the hearing and disposition of each case." The court of appeals held that en banc proceedings are unconstitutional because en banc review would result in panels of more than three judges. *McFadden II* at ¶ 8.

{¶ 13} We disagree with the court of appeals. The historical background of Section 3(A), Article IV of the Ohio Constitution reveals that the number "three" in the provision is essentially a quorum requirement related to the makeup of appellate panels in the 19th Century. "The modern courts of appeals in Ohio can trace their origin to the Constitutional Convention of 1851. The district courts were, at times, composed of two of the common pleas judges of the respective districts and one of the Supreme Court judges, any three of whom formed a quorum. * * * Thus, the limits were largely imposed by limitations on the size of the judiciary at the time, rather than on a predetermined formula to involve only three judges in a decision." *State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, ¶ 53, fn. 8 (Gallagher, J., concurring in part, dissenting in part), citing F.R. Aumann, The Development of the Judicial System of Ohio (1932), 41 J. of the Ohio Historical Soc. 195.

{¶ 14} We acknowledge the reasonable view of the dissent on this issue, but given the context in which Section 3(A) was adopted, we conclude that the words should be interpreted in order that they do not prohibit en banc judgments in courts of appeals. This quorum requirement does not function as a cap on the number of judges who may sit on a panel. While the plain language of Section 3(A), Article IV mandates that appellate cases shall be heard by *at least* three judges to ensure that each case is properly reviewed, it does not foreclose the

possibility of larger panels in special circumstances. See also *Textile Mills*, 314 U.S. at 333–335, 62 S.Ct. 272, 86 L.Ed. 249 (stating that a similar statute should not be "taken too literally" and that sacrificing "literalness for common sense" is permissible when it "does no violence to the history" of the provision).

{¶ 15} The need to definitively and efficiently resolve intradistrict conflicts presents a special circumstance that warrants a larger appellate panel. Every court of appeals in this state is composed of at least four judges, but three-judge panels are convened to resolve cases. When different panels hear the same issue, diametrically different results are possible, as this case clearly shows. Compare *Senegal*, Franklin App. No. 93API08–1161, 1994 WL 73895, *3 with *McCoy*, 2005-Ohio-1848, 2005 WL 914664, ¶ 6–7. However, all court of appeals decisions are applicable precedent unless and until they are formally overruled. See S.Ct. R.Rep.Op. 4(B) ("All court of appeals opinions * * * may be cited as legal authority and weighted as deemed appropriate by the courts"). Thus, schisms have developed in districts as different panels announce conflicting opinions on identical issues of law, leaving litigants to guess which decision controls. See *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 17 (noting that different panels of the Eighth District Court of Appeals issued two separate interpretations of the same issue on the same day); see also *Evans v. Ohio Dept. of Ins.*, Delaware App. No. 04CA80, 2005-Ohio-3921, 2005 WL 1802667, ¶ 19–21 (noting that the Fifth District Court of Appeals reached different conclusions on a specific issue over a 15–month period). The issuance of conflicting decisions from a court of appeals does not serve the fundamental purpose for the operation of courts—the resolution of legal disputes.

{¶ 16} " 'The principal utility of determinations by the courts of appeals in banc is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions, while enabling the court at the same time to follow the efficient and time-saving procedure of having panels of three judges hear and decide the vast majority of cases as to which no division exists within the court.' " *United States v. American–Foreign Steamship Corp.* (1960), 363 U.S. 685, 689–690, 80 S.Ct. 1336, 4 L.Ed.2d 1491, quoting Maris, Hearing and Rehearing Cases in Banc (1954), 14 F.R.D. 91, 96. This form of review promotes finality and predictability of the law within appellate districts, which is especially important considering that the court of appeals is the final stop in the legal process for many cases. See *Textile Mills*, 314 U.S. at 335, 62 S.Ct. 272, 86 L.Ed. 249.

{¶ 17} We therefore hold that en banc proceedings do not violate Section 3(A), Article IV of the Ohio Constitution.

## IV

{¶ 18} In his second proposition of law, McFadden argues that the Court of Appeals for Franklin County abused its discretion by refusing to convene en banc to resolve the conflict over the statute of limitations applicable to this case. However, this issue is not ripe for our consideration. Because the court of appeals held that en banc review is unconstitutional and provided only a short dicta discussion about whether it would review the conflict in this case en banc if the process were constitutional, it never fully decided whether to hold en banc proceedings. We therefore remand the case to the court of appeals to determine whether to convene en banc to review the alleged conflict on the statute of limitations issue herein.

{¶ 19} Two issues are relevant to this remand. First, we hold that courts of appeals have discretion to determine whether an intradistrict conflict exists; if the judges of a court of appeals determine that two or more decisions of the court on which they sit are in conflict, they must convene en banc to resolve the conflict. If a party believes that a court of appeals has erred in making such a determination, it may seek the normal remedies, such as filing a motion for reconsideration or appealing to this court for discretionary review of the issue. An abuse-of-discretion standard applies to decisions on whether to grant en banc proceedings.

{¶ 20} Second, we recognize that the procedure for initiating and engaging in en banc review should be dictated by a procedural rule. The Eighth District Court of Appeals is the only district in this state that has promulgated such a rule. See Article 8(b), Eighth District Court of Appeals Standing Resolution of the Rules for the Conducting of Court Work. The Supreme Court Commission on the Rules of Practice and Procedure is currently drafting a rule on this subject; once this rule is in place, there will be a uniform procedure for this process.

{¶ 21} Until that rule becomes effective, courts of appeals may adopt practices and procedures to facilitate en banc resolution of conflicting decisions. We reject the university's argument that en banc proceedings are impermissible ultra vires acts in the absence of a rule specifically authorizing them. Our decisions in this case and *In re J.J.* provide sufficient authorization for such proceedings; no further authority is necessary.

## V

{¶ 22} For the foregoing reasons, we reverse the holding of the court of appeals and remand the case to the court of appeals to determine whether it should convene en banc to resolve the conflict raised herein.

Judgment reversed
and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

LANZINGER and CUPP, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 23} I respectfully dissent and would affirm the decision of the Court of Appeals for Franklin County that denied McFadden's application for reconsideration. The court of appeals followed *McCoy v. Toledo Corr. Inst.*, Franklin App. No. 04AP–1098, 2005-Ohio-1848, 2005 WL 914664, and "specifically overruled" *Senegal v. Ohio Dept. of Rehab. Corr.* (Mar. 10, 1994), Franklin App. No. 93 API08–1161, 1994 WL 73895, an earlier case holding that a six-year, rather than two-year, statute of limitations applied to claims such as McFadden's. *McFadden v. Cleveland State Univ.*, 170 Ohio App.3d 142, 2007-Ohio-939, 866 N.E.2d 82, ¶ 3. Thus, the court of appeals has already resolved any intradistrict conflict. McFadden had no basis for a motion for reconsideration.

{¶ 24} In reversing and remanding for the court of appeals to determine whether to hold an en banc hearing, the majority concludes that an en banc proceeding is constitutional based on four points. First, it notes that federal courts and a minority of state courts [1] use some form of en banc review. Second, it relies on paragraph two of the syllabus in *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851. Third, it adds words to Section 3(A), Article IV of the Ohio Constitution to contend that "three judges" states a quorum, instead of the defined number for a hearing panel on an appellate case. Fourth, it cites policy reasons to support an en banc procedure. Each of these points is debatable; cumulatively, they are unpersuasive.

### The Constitution of Ohio, unlike the federal statute, does not provide for en banc hearings

{¶ 25} Since 1948, the federal circuit courts have been given specific power by statute to sit "in banc" [2] for a hearing or rehearing. The United States Supreme Court has explained the history of the procedure in *W. Pacific RR. Corp. v. W. Pacific RR. Co.* (1953), 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986. In its current form, Section 46, Title 28, U.S.Code states:

_____

1. Only 18 states use en banc proceedings, according to John B. Oakley, Comparative Analysis of Alternative Plans for the Divisional Organization of the Ninth Circuit (2000—2001), 34 U.C.Davis L.Rev. 483. (One other state, New Jersey, provides for review by an expanded panel consisting of one additional judge. Id. at 534–537.) Thirteen of the 40 intermediate appellate courts are, like Ohio, divided into geographical districts with essentially separate courts. In only Texas and Florida are there district en banc proceedings. Id. at 514–515.

2. Although the federal statute uses the term "in banc," the more common term is "en banc."

{¶ 26} "(c) Cases and controversies shall be heard and determined by a court or panel of *not more than* three judges (except that the United States Court of Appeals for the Federal Circuit may sit in panels of more than three judges if its rules so provide), unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in regular active service. *A court in banc shall consist of all circuit judges in regular active service* * * *.

{¶ 27} "(d) A majority of the number of judges authorized to constitute a court or panel thereof, as provided in paragraph (c), shall constitute a quorum." (Emphasis added.)

{¶ 28} In contrast, Section 3(A), Article IV of the Ohio Constitution states: "The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals *consisting of three judges*. Laws may be passed increasing the number of judges in any district wherein the volume of business may require such additional judge or judges. In districts having additional judges, **three judges** *shall participate in the hearing and disposition of each case*." (Boldface and italics added.)

{¶ 29} Section 3(A), Article IV does not say "at least" three judges, contrary to the majority's addition, and the word "quorum" does not appear. The Ohio Constitution mandates a definite number—that "three judges shall participate in the hearing and disposition of each case." The majority cites *Textile Mills Securities Corp. v. Commr. of Internal Revenue* (1941), 314 U.S. 326, 333–335, 62 S.Ct. 272, 86 L.Ed. 249 (stating that a "similar statute" should not be "taken too literally" and that sacrificing "literalness for common sense" is permissible when it "does no violence to the history" of the provision). But *Textile Mills* is inapposite here.

{¶ 30} The statutes in *Textile Mills* created an anomaly because one statute specified that each federal circuit court of appeals "shall consist of three judges" (former Section 117, Title 28, U.S.Code), another statute provided that some circuits would have *four* judges (former Section 118, Title 28, U.S.Code), and no statute specified the number of judges who could hear and decide a case. *Textile Mills*, 314 U.S. at 328–332, 62 S.Ct. 272, 86 L.Ed. 249. See also *State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, ¶ 77–79 (Karpinski, J., dissenting). But, as noted above, that anomaly does not exist in Ohio, since the Constitution specifies that "three judges shall participate in the hearing and disposition of each case." Section 3(A), Article IV, Ohio Constitution. Additionally, unlike in *Textile Mills*, the reference here is not to a statute, but to the Ohio Constitution.

{¶ 31} In contrast to the majority's expansion of Section 3(A), Article IV, the statutes providing for the makeup of the courts of appeals have been consistent

with the mandate of Section 3(A) that "three judges shall participate in the hearing and disposition of each case" in the courts of appeals. For example, R.C. 2501.012 designates the number of judges in each court of appeals and when their terms of office begin and end. As one of the dissenting judges explained in *State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, with respect to the statute as it related to the Eighth District Court of Appeals:

{¶ 32} "In 1959 the Ohio Constitution was amended to authorize the legislature to pass laws to increase the number of judges. Section 6, Article IV, Ohio Constitution. * * * In 1970, R.C. 2501.012 gave a general provision for districts with more than three judges: *'In such districts,* any three judges shall comprise the court of appeals in the hearing and disposition of cases * * *.' (Emphasis added.)

{¶ 33} " * * * This statute was repeatedly amended in 1976, 1980, 1984, 1986, and 1990. Each time, the legislature specifically addressed the particular district: *'In the eighth district,* any three judges shall comprise the court of appeals in the hearing and, disposition of cases * * *.' (Emphasis added.) * * * Each time the number of judges changed, the legislature retained the sentence specifying the number of judges as three for comprising the panel to hear and dispose of a case.

{¶ 34} "Over the years, additional judges were also added to some of the other districts. With each change, the legislature retained the language specifying a three-judge panel. Currently, the statute specifies a three-judge panel and reiterates this for each specific district in which additional judges have been added. There is a separate and identical provision for nine different districts: R.C. 2501.012(A), (B), (C), (D), and (E) and 2501.013(A), (B), (C), and (D)—a total of nine specific provisions, each time reiterating that three judges will hear and dispose of a case." Id. at ¶ 83–85 (Karpinski, J., dissenting).

{¶ 35} Similarly, R.C. 2501.012(C) provides, "In the tenth district, *any three judges shall comprise the court of appeals* in the hearing and disposition of cases in accordance with any local rules of practice and procedure that may be adopted by the judges of the court." (Emphasis added.) These statutes do not suggest that the General Assembly viewed the constitutional command of Section 3(A), Article IV to mean that "at least three judges" of the court of appeals must hear and decide each case, but that, consistent with the constitutional text, "three judges" must do so.

### *In re J.J.* is distinguishable and does not control the outcome here

{¶ 36} The second syllabus paragraph of *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, is cited as having "established" en banc proceedings and also as "sufficient authorization" for them. Holding that "[a]ppellate courts

are duty-bound to resolve conflicts within their respective appellate districts through en banc proceedings," *J.J.* dealt with a multijudge court with a local en banc rule in place and two different three-judge panels that had issued conflicting opinions on the same day. This court was not asked to determine the constitutionality of an en banc proceeding in *J.J.*, and no analysis was offered to justify the court's holding on that point.

{¶ 37} Furthermore, *J.J.* did not discuss the procedure that was to be used: What mechanics begin the process? Does a litigant have power to request an en banc hearing or rehearing, and how many judges must respond to the petition? Does the court have the power, sua sponte, to consider a case en banc? How many judges are required to overrule the three judges who initially heard the case? Is there an appeal from the exercise of the court's discretion? The majority comments that the Supreme Court Commission on the Rules of Practice and Procedure is currently drafting a rule. That rule would, however, conflict with both the Ohio Constitution and R.C. 2501.012.

### Policy reasons do not justify en banc proceedings

{¶ 38} Of the 12 appellate districts, only the Eighth and Fifth are mentioned as having different panels that have announced conflicting opinions within the same district on identical issues of law. That all courts of appeals' opinions may be considered precedent unless and until they are formally overruled (see S.Ct. R.Rep.Op. 4(B)) does not mean that en banc is the only solution to the perceived problem. The Tenth District itself has adopted the general rule that "the most recent decision regarding [an] issue * * * is the deciding precedent." *Miller v. Lindsay–Green, Inc.*, Franklin App. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 101. In addition, this court functions as the court of last resort in articulating what the law is, within a district as well as within the state. A majority of state supreme courts with intermediate appellate courts have the same function.

{¶ 39} Justice Jackson raised a note of caution when discussing en banc proceedings in federal courts: "Rehearings en banc are not appropriate where the effect is simply to interpose another review by an enlarged Court of Appeals between decision by a conventional three-judge court and petition to this Court. Delay, cost, and uncertainty, which take their toll of both the successful and the unsuccessful, the just and the unjust litigant, are each increased by an additional appeal to a hybrid intermediate court." *W. Pacific RR. Corp.*, 345 U.S. at 273, 73 S.Ct. 656, 97 L.Ed. 986 (Jackson, J., dissenting). Regardless of policy considerations, en banc proceedings are not authorized by either the Ohio Constitution or state statute.

### There is no need for remand to the court of appeals

{¶ 40} Finally, in remanding the case to the court of appeals to determine "whether it should convene en banc to resolve the conflict," the majority ignores this unanimous statement: "Between our decision in this case and the decision of the panel in *McCoy*, five of the eight sitting judges on this court have held that claims such as appellant's are subject to the two-year statute of limitations set forth in R.C. 2743.16. There is no reason to believe that more formal en banc proceedings would produce a different result." *McFadden v. Cleveland State Univ.*, 170 Ohio App.3d 142, 2007-Ohio-939, 866 N.E.2d 82, ¶ 10. Thus, the three-judge court that participated in the hearing and disposition of this case has already determined that there is no conflict requiring an en banc hearing. Furthermore, the Tenth District Court of Appeals has no local rule providing for an en banc procedure. And there is no guidance from this court as to how an en banc process should be implemented.

{¶ 41} Because any rule would conflict with the Ohio Constitution, I dissent and would affirm the decision of the court of appeals in every respect.

Cupp, J., concurs in the foregoing opinion.

———————————

### Cupp, J., dissenting.

{¶ 42} In addition to joining Justice Lanzinger's well-reasoned dissent, I write separately to emphasize my strong concerns about today's decision.

{¶ 43} Regretfully, the majority succumbs to the siren call of convenience rather than adhering to an essential principle of constitutional interpretation, which is to apply the constitutional text only according to its plain meaning and intent. The majority judicially revises the unambiguous, nearly 50–year–old constitutional provision requiring that cases in the district courts of appeals be decided by "three judges."

{¶ 44} The majority opines that "[t]he historical background of Section 3(A), Article IV, of the Ohio Constitution reveals that the number 'three' in the provision is essentially a quorum requirement related to the makeup of appellate panels in the 19th century." Majority opinion at ¶ 13. It may be that the choice of "three judges" originally arose in that fashion as a matter of historical practice. But in 1883, the earlier designation that "any three of [the judges of which the former 'district courts' were composed] shall be a quorum" was removed. That reference to three judges forming a "quorum" has not appeared in the constitu-

tional provision pertaining to the composition of the courts of appeals since that time.[3]

{¶ 45} Thus, the composition of the district courts from 1851 to 1883 does not answer the question as to what the text of the Ohio Constitution provides today regarding the courts of appeals. From 1913 until today, Section 3(A), Article IV and its predecessors have expressly required that cases in the courts of appeals be heard and decided by "three judges," even when the number of judges on the particular district court of appeals exceeds three.

{¶ 46} The court's decision to expand Section 3(A), Article IV, cannot be defended on the ground of necessity. Although I fully agree that contradictory decisions by separate three-judge panels in courts of appeals fail to resolve disputes consistently and present an untenable situation, there are at least two methods of resolving this problem without resorting to the sort of judicial rewrite of the constitution found in the majority opinion. One method is through the court's existing discretionary jurisdiction to accept and decide cases of "public or great general interest." Section 2(B)(2)(e), Article IV, Ohio Constitution. The second method is through the constitutionally prescribed amendment process. See, e.g., Section 1, Article XVI, Ohio Constitution.

{¶ 47} The first method, accepting discretionary review of conflicting decisions by separate three-judge panels within an appellate district, is both familiar and workable. When the situation arises, an appellant need merely include this circumstance in the jurisdictional memorandum filed with this court. If two decisions within the district truly conflict, this court is perfectly capable of resolving the legal issue by hearing the appeal of the case or cases.

---

3. See former Ohio Constitution, Article IV, Section 5, effective from September 1, 1851, to October 9, 1883 ("District courts shall be composed of the judges of the court of common pleas of the respective districts, and one of the judges of the supreme court, any three of whom shall be a quorum * * *"); former Ohio Constitution, Article IV, Section 6, effective from October 9, 1883, to January 1, 1913 ("Such [circuit] courts shall be composed of such number of judges as may be provided by law * * *"); former Ohio Constitution, Article IV, Section 6, effective from January 1, 1913, to January 1, 1945 ("The state shall be divided into appellate districts * * *, in each of which shall be a court of appeals consisting of three judges * * *"); former Ohio Constitution, Article IV, Section 6, effective from January 1, 1945, to November 3, 1959 (same); former Ohio Constitution, Article IV, Section 6, effective from November 3, 1959, to May 7, 1968 ("The state shall be divided into appellate districts * * *, in each of which there shall be a court of appeals consisting of three judges. Laws may be passed increasing the number of judges in any district* * *. In districts having additional judges, three judges shall participate in the hearing and disposition of each case"); former Ohio Constitution, Article IV, Section 3(A), effective from May 7, 1968, to January 1, 1995) ("The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. Laws may be passed increasing the number of judges in any district * * *. In districts having additional judges, three judges shall participate in the hearing and disposition of each case").

{¶ 48} The second method, amending the Ohio Constitution to authorize en banc proceedings under procedures that this court would be authorized to adopt by rule, would allow for maximum flexibility in designing a workable system and would allow intradistrict conflicts to be resolved, in the first instance, by the judges of a district court of appeals themselves. In the past ten years, the constitution of Ohio has been formally amended through the constitutional amendment process no fewer than five times.[4] There is no reason to believe that the constitutional amendment process would be inadequate to authorize en banc court of appeals proceedings. This court has never asked for such authority, either formally or informally. Instead, the majority rushes headlong into judicially revising the constitution itself—a power clearly not granted to this court.

{¶ 49} Moreover, today's far-reaching decision throws open wide new doors for district courts of appeals to experiment with newfound flexibility. The boundaries of that flexibility are wholly undefined. The majority rules, "This quorum requirement [of three judges] does not function as a cap on the number of judges who may sit on a panel. While the plain language of Section 3(A), Article IV mandates that appellate cases shall be heard by *at least* three judges to ensure that each case is properly reviewed, it does not foreclose the possibility of larger panels in special circumstances." (Emphasis sic.) ¶ 14. Today's ruling also does not foreclose this possibility in *any* case.

{¶ 50} What restriction, for example, prevents all of the judges of a district court of appeals from hearing and determining from the onset any case on its docket? Why would courts be limited to sitting en banc in what the majority characterizes as "special circumstances"? Under today's decision, the Ohio Constitution would not prevent it. The question prompting today's decision pertains to the use of en banc proceedings as a method of resolving intradistrict conflicts, but the court's new interpretation of Section 3(A), Article IV of the Ohio Constitution cannot logically be limited to that purpose. Thus, the effect of the majority's interpretation is to remove any constitutional limit on how many judges can hear and decide any district appellate case because, as the majority holds, the constitution does not limit participation to three, and only three, judges.

{¶ 51} The work load in our district appellate courts will, as a practical necessity, limit the size of the hearing panel, resulting in most cases being decided by the traditional number of three judges. It may well be, however, that a greater number of judges will occasionally decide to sit from the outset on cases that are more legally challenging or factually interesting, or in which there is

---

4. See http://www.law.csuohio.edu/lawlibrary/resources/lawpubs/ohioconlaw/ProposedConstitutional Amendments.html.

great public interest. Today's reading of the Ohio Constitution by the majority ostensibly would permit district appellate judges to make that choice. Such is the consequence of straying from the plain meaning of the constitutional text. Applying the plain meaning of the constitutional text, however, would wisely avoid such uncertainty and experimentation.

{¶ 52} I respectfully dissent.

LANZINGER, J., concurs in the foregoing opinion.

———

Gallagher Sharp and Timothy J. Fitzgerald; and Dennis J. Niermann Co., L.P.A., and Dennis J. Niermann, for appellant.

Nancy Hardin Rogers, Attorney General, Benjamin C. Mizer, Solicitor General, Kimberly A. Olson, Deputy Solicitor, Susan M. Sullivan, Assistant Solicitor, and Randall P. Knutti, Assistant Attorney General, for appellee.