OPINION
JANE B. STRANCH, Circuit Judge.
This is an interlocutory review of a preliminary injunction that stops Defendant The Wine Group (“TWG”), a California-based national wine supplier, from terminating distributorship agreements with the Plaintiffs, two franchisees who are the exclusive distributors of certain TWG products in several Ohio counties. We find no abuse of discretion in the district court’s determination that the factors collectively weigh in favor of granting the preliminary injunction. We AFFIRM.
I. BACKGROUND
Like many other states, Ohio has a three-tier system for distributing alcoholic beverages: Manufacturers supply products to distributors, who in turn supply products to retailers for sale to the public. Ohio Alcoholic Beverages Franchise Act (“Franchise Act” or “Act”), Ohio Rev.Code Ann. § 1333.82, et seq.; see Granholm v. Heald, 544 U.S. 460, 466-68, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) (reviewing three-tier model). Manufacturers must contract with distributors through a franchise agreement. Ohio Rev.Code Ann. § 1333.83. Distributors are granted exclusive rights to distribute specific brands within their territories, creating localized monopolies over specific products. Id. § 4301.241.
TWG is the third largest wine manufacturer in the United States. Its best known brands include Franzia, Paul Mas-son, Almadén, and Inglenook. For the past several decades it has distributed some, but not all, of its wine products under exclusive franchise agreements for various Ohio counties with Tri-County Wholesale Distributors, Inc. and the Bellas Company d/b/a Iron City Distributing (collectively “Wine Distributors”). TWG distributes other wine products through other distributors in the counties serviced by the Wine Distributors. Similarly, the Wine Distributors distribute wines (and other products) from other manufacturers besides TWG. TWG’s wines constitute twenty percent and seven percent of wine sales made by Tri-County and Iron City, respectively.
On July 2, 2010, TWG sent the Wine Distributors separate notices that it was terminating their franchises under Ohio Rev.Code Ann. §§ 1333.84 and 1333.85, effective September 6, 2010.[1] The Termination Notices explained that “TWG has concluded that it is in the best interest of the company to consolidate all brands owned, licensed and/or imported by TWG and distributed by Tri-County Distributing with one distributor in the State of *479 Ohio.”[2] Terminating the Wine Distributors’ franchises was “part of an on-going nationwide plan of reorganization of TWG’s distribution network in order to more effectively and efficiently manage” certain product lines in Ohio and nationally. In particular, the Termination Notices referred to Ohio’s mandatory mark-up pricing system. That system requires wine distributors to mark up products by no less than thirty-three percent, guaranteeing significant profit margins to distributors and placing the burden on manufacturers to remain price-competitive. Ohio Admin. Code 4301:1-1-03(C)(2)(b). Reducing distribution redundancies, the Termination Notices explained, provides “the best opportunity for TWG to reduce costs and thereby maintain and possibly reduce prices to the great benefit of consumers in the State of Ohio.”
The Termination Notices described specific factors contributing to TWG’s termination decision, including shipping to four distribution outlets rather than twelve, an enhanced focus on a single distributor’s sales team, better use of its sole Ohio sales representative, the elimination of redundant brand presentations among multiple distributors, consolidated pricing negotiations, diminished overhead in handling customer service and invoicing among multiple distributors, and increased focus and coordination of statewide brands and priorities. In effect, TWG said that it could reduce its costs by dealing with only one Ohio distributor and could increase sales because that distributor had better experience with major retail chains.
After receipt of the Termination Notices, the Wine Distributors filed a diversity action requesting declaratory and permanent injunctive relief under the theory that TWG’s proposed action would violate the Franchise Act. They also filed motions for a preliminary injunction to enjoin TWG from terminating the franchise agreements during the pendency of the action. The district court granted the Wine Distributors’ motion for a preliminary injunction, finding that TWG was unlikely to satisfy the “just cause” termination requirement of the Franchise Act, the Wine Distributors adequately demonstrated irreparable harm, no party would be in a worse position by maintaining the status quo, and the public interest would be benefitted by an injunction. Tri-Cnty. Wholesale Distribs., Inc. v. The Wine Grp., Inc., No. 2:10-cv-693, 2010 WL 3522973, at *8 (S.D.Ohio Sept. 2, 2010). TWG filed this interlocutory appeal on the basis that the district court erred in its findings and abused its discretion in weighing those findings in favor of granting the injunction.
II. DISCUSSION
A. Standard of Review
When considering an appeal concerning a preliminary injunction, we review the district court’s factual findings for clear error and its legal conclusions, including whether the movant is likely to succeed on the merits, de novo. Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 541 (6th Cir.2007). The district court’s ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed under a “highly deferential” abuse of discretion standard. Id. (quoting Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir.2000)). “The district court’s determination will be disturbed only if the district court *480 relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.” Id. (quoting Hamilton’s Bogarts, Inc. v. Michigan, 501 F.3d 644, 649 (6th Cir.2007)).
B. Injunctive Relief under the Ohio Alcoholic Beverage Franchise Act
As a threshold matter, TWG asks this Court to find that the Franchise Act forbids entry of a preliminary injunction and allows only monetary damages for a violation. We agree with the district court that the Franchise Act does not prohibit a court from issuing a preliminary injunction:
The Franchise Act contemplates suits for “damages or other relief.” Ohio Rev. Code § 1333.87 (emphasis added). Moreover, numerous courts have issued injunctions preserving the rights of distributors under the Franchise Act until the merits could be fully litigated, a fact that presumably has not escaped the Ohio General Assembly’s notice. See, e.g., InBev USA LLC v. Hill Distrib. Co., No. 2:05-cv-298 [2005 WL 6013027] (S.D.Ohio Mar. 31, 2005) (granting temporary restraining order); Esber Beverage Co. v. Labatt USA Operating Co., No. 2009CV03142 (Stark Cty. Ohio Com. Pl. Dec. 1, 2009) (granting preliminary injunction).
Tri-Cnty., 2010 WL 3522973, at *2. The Ohio Court of Appeals quoted this very language and wrote: “We agree. Based upon the language of R.C. 1333.87, we find the trial court did not err in granting injunctive relief.” Esber Bev. Co. v. Heineken USA, Inc., No. 2011CA00033, 2011 WL 5626592, at *5 (Ohio Ct.App. Nov. 14, 2011).
C. Preliminary Injunction Factors
“The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.” Certified Restoration, 511 F.3d at 542 (quoting Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). Given this limited purpose, a party seeking a preliminary injunction “is not required to prove his case in full” under the same procedures and evidentiary requirements that would apply at a trial on the merits. Id. (same). Courts consider four factors when deciding whether to grant a preliminary injunction under Federal Rule of Procedure 65:
(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.
Id. (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir.2005)). “These four considerations are ‘factors to be balanced, not prerequisites that must be met.’ ” Id. (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir.2003)).
1. Likelihood of Success on the Merits
For the first factor, we ask whether the Wine Distributors have a strong likelihood of success on the merits under the Franchise Act. We apply Ohio law when considering this question. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Certified Restoration, 511 F.3d at 541. Because the Ohio Supreme Court has not squarely answered the questions presented here, we must “predict how it would rule, by looking to ‘all available data,’ including state appellate decisions.” Penton Media, Inc. v. Affiliated FM Ins. Co., 245 Fed.Appx. 495, 499 (6th Cir.2007) (quoting Bovee v. Coo *481 pers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir.2001)). We should not disregard decisions of the Ohio appellate courts unless “we are presented with persuasive data that the [Supreme Court of Ohio] would decide otherwise.” Medlen v. Estate of Meyers, 273 Fed.Appx. 464, 470 (6th Cir.2008) (quoting Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc., 249 F.3d 450, 454 (6th Cir.2001)); see McFadden v. Cleveland State Univ., 120 Ohio St.3d 54, 896 N.E.2d 672, 676 (2008) (quoting Ohio Sup.Ct. R. Rep. Op. 4(B) (“All court of appeals opinions ... may be cited as legal authority and weighted as deemed appropriate by the courts.”)); cf. Morrison v. B. Braun Med. Inc., 663 F.3d 251, 257 n. 1 (6th Cir.2011) (noting that decisions of the Michigan intermediate courts are binding authority under Michigan law).
The Franchise Act prohibits manufacturers from terminating a franchise “for other than just cause.” Ohio Rev.Code Ann. § 1333.85. The Franchise Act does not define “just cause.” Both sides of this dispute cite to cases that they argue support their positions. The Wine Distributors point us to Dayton Heidelberg Distributing Co. v. Vintners International Co. of New York, in which the court held that “just cause must mean something more than a manufacturer’s unilateral determination that it could make more money if a franchise were terminated.” No. C-3-87-436, 1991 WL 1119912, at *8 (S.D.Ohio Apr. 8, 1991); see also Tri-Cnty. Distrib., Inc. v. Brown Forman Bev. Co., No. 91 C.A. 225, 1993 WL 150297, at *3 (Ohio Ct.App. May 4, 1993) (holding that termination of distributorship for reasons not related to distributor’s performance lacked just cause). TWG relies chiefly on Superior Beverage Co. v. Schieffelin & Co., which held that just cause “only requires bare business judgment” and that wrongdoing is sufficient, but not necessary, to meet this standard. Nos. 1:05 CV 0834, 4:05 CV 0868, 2007 WL 2756912, at *6 (N.D.Ohio Sept. 20, 2007).
We disagree with TWG’s argument that these competing cases, which the district court observed to be “irreconcilable,” must preclude a determination that the Wine Distributors are likely to succeed on the merits. In the absence of a definitive determination by the Ohio Supreme Court, our task is to predict how that court would rule in this case. In re Dow Corning Corp., 419 F.3d 543, 549 (6th Cir.2005). Sometimes this task is difficult, but here it appears to be easy: The Ohio Court of Appeals recently issued a decision in a ease between TWG and another recipient of the Termination Notice in which the court expressly held that the district court’s order in this case, “and its reliance upon Vintners, is more persuasive than Schieffelin.” Esber Bev. Co. v. Wine Grp., Inc., No. 2011CA00179, 2012 WL 983194, at *5 (Ohio Ct.App. March 19, 2012).[3] While this interlocutory appeal of a preliminary injunction requires us to merely predict whether the Wine Distributors are likely to succeed on the merits, Esber was an appeal of a declaratory judgment in which the merits were actually reached. Id. at *1. The Esber court concluded: “[U]nder the analysis and reasoning in The Wine Group and Vintners as to the meaning of just case, reasonable minds can only conclude that TWG’s business reasons for terminating the franchise were not just cause.” Id. at *6.
We find no persuasive reasons why the Ohio Supreme Court would reach a different result. The plain language of the Franchise Act states that “just cause” may not be constituted by “[a] unilateral altera *482 tion of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of [two statutes].” Ohio Rev.Code Ann. § 1383.85(B)(3) (emphasis added). As the district court observed, “Vintners gives effect to § 1333.85(B)(3), whereas Schieffelin does not.” Tri-Cnty., 2010 WL 3522973, at *4.[4] Similarly, TWG, relying heavily on Schieffelin, makes no attempt to account for this provision. Looking directly at the Franchise Act, we have little trouble concluding that the Wine Distributors have a strong likelihood of success on the merits because the Termination Notices do not suggest any breach or statutory violation but rather appear to implicate precisely the type of conduct implicated by § 1333.85(B)(3). See Vintners, 1991 WL 1119912, at *9 (“[S]ubsection (B)(3) prohibits importers from terminating distributorships simply for purposes of restructuring an existing franchising network, as Vintners did here, absent a breach of duty by the franchisee.”).[5]
Although TWG cautions us from an “unnecessary ... review of the merits,” Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc., 753 F.2d 1354, 1356 (6th Cir.1985), the factor at issue contemplates a weighing of the parties’ chances at trial by inquiring as to the likelihood of success, rather than its mere possibility. Sometimes this consideration will yield a clear answer even if one court has reached the opposite conclusion. See Certified Restoration, 511 F.3d at 543-50 (reversing district court’s assessment of this factor after finding non-compete covenant was unambiguous under state law). In fact, this Court has affirmed the issuance of a preliminary injunction based only on this factor upon concluding that the moving party had a “near certainty” of success on the merits. Mascio v. Pub. Emps. Ret. Sys. of Ohio, 160 F.3d 310, 315 (6th Cir.1998).[6] Although we conclude that the Wine Distributors appear to have a near certainty of success on the merits due to Esber and the deference which the district court must provide, we will continue to assess the remaining factors. We also note that, despite these assessments, our conclusions of law are not binding at trial on the merits. Certified Restoration, 511 F.3d at 542 (quoting Camenisch, 451 U.S. at 395, 101 5. Ct. 1830).
2. Irreparable Injury
In the second factor of the preliminary injunction analysis we consider whether the Wine Distributors would suffer irreparable injury without the injunction. Such harm must be “likely,” not just possible. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). “A plaintiffs harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.” Cer *483 tified Restoration, 511 F.3d at 550 (quoting Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir.2002)). “However, an injury is not fully compensable by money damages if the nature of the plaintiffs loss would make the damages difficult to calculate.” Id. (quoting Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir.1992)).
The district court found the Wine Distributors demonstrated irreparable harm:
TWG’s products comprise a significant portion of Plaintiffs’ sales. Moreover, Plaintiffs have promoted and distributed TWG’s beverages for decades. It is therefore reasonable to infer that Plaintiffs have acquired substantial good will in connection with their distribution of TWG’s products, which include, in TWG’s own words, “several unique, high velocity wines.”
Tri-Cnty., 2010 WL 3522973, at *8. We find no error in this analysis. The loss of a product which is “unique” — a classification effectively conceded by TWG in its Termination Notices — can cause a drop in customer goodwill. See Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir.1996); Tom Doherty Assocs., Inc. v. Saban Entm’t, Inc., 60 F.3d 27, 37 (2d Cir.1995). “[T]his court has recognized that a loss of business goodwill may constitute irreparable harm because of the difficulty in calculating damages.” Langley v. Prudential Mortg. Capital Co., LLC, 554 F.3d 647, 649 (6th Cir.2009) (citing Basicomputer Corp., 973 F.2d at 512). Thus, the district court did not abuse its discretion in holding that the Wine Distributors will likely suffer an irreparable injury.[7]
3. Substantial Harm to Others
The third factor we must consider is whether substantial harm to others will occur if the injunction is granted. The district court weighed this factor in favor of the Wine Distributors because, although a preliminary injunction would “deny or at least delay the benefits TWG hopes to reap as a result of the ... consolidation plan,” it would only maintain the status quo and would not place TWG, or any other party, “in a worse position than they were in before the injunction.” Tri-Cnty., 2010 WL 3522973, at *8. TWG does not challenge this finding.
4. Public Interest
The final factor is whether the public interest would be served by granting injunctive relief. The district court found that this factor supported an injunction as well because “giving effect” to Ohio laws and “preserving jobs” benefits the public. Id. It gave less weight, but did not completely dismiss, TWG’s position that the lower costs made possible by its proposal would benefit consumers: “Given the unique nature of alcoholic beverages, which are a blessing to many, but a curse to more than a few, the Court feels less strongly that knocking a quarter off the price of MD 20/20 would provide a measurable benefit to the public.” Id.
TWG challenges this conclusion. But there is no dispute that the statute the distributors seek to enforce is one that the Ohio legislature passed through the ordinary democratic process. The Franchise *484 Act therefore represents the legislature’s judgment that enforcement of the statute is in the public interest. See Golden Gate Rest. Ass’n v. City and Cnty. of San Francisco, 512 F.3d 1112, 1127 (9th Cir.2008); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2948.4 (2d. ed. 2012) (“The public interest may be declared in the form of a statute”).
Courts in Ohio have recognized that the Franchise Act was directly intended to create the very results which TWG now claims to be against the public interest. See Esber Bev. Co., 2012 WL 983194, at *4 (noting that the possibility of a manufacturer getting “locked into an unprofitable situation” has been determined by the Ohio legislature to be “a business risk which must be assumed by all manufacturers of alcoholic beverages which avail themselves of the rights and privileges of marketing their wares in Ohio” (citation and internal quotation marks omitted)); see also Bev. Distribs., Inc. v. Miller Brewing Co., 803 F.Supp.2d 765, 777-78 (S.D.Ohio 2011) (“The just cause requirement for terminating a franchise agreement is intended to protect the franchisee from this type of arbitrary and potentially coercive act.” (citation and internal quotation marks omitted)).
We will not second-guess the legislature here because TWG makes no argument that the statute is unconstitutional or even that the statute undermines the public interest. See F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 301 (6th Cir.2009) (“[O]ur role is to apply Ohio’s resolution of this public policy question, not to second guess the determination.”). The district court did not abuse its discretion in holding that it is in the public interest to enforce the Franchise Act in this case.
D. Balancing the Preliminary Injunction Factors
Upon finding that all of the factors supported the Wine Distributors, the district court naturally concluded that the factors collectively weighed in favor of granting a preliminary injunction. Tri-Cnty., 2010 WL 3522973, at *8. Similarly, we hold the court did not abuse its discretion in weighing the factors in favor of granting the preliminary injunction. See Certified Restoration, 511 F.3d at 541-42.
E. Sealed Documents
Having reviewed the analysis of Section IV of the dissent, we are inclined to agree that the parties’ stipulated protective order was overly broad and improperly entered. Because the matter was not fully presented to this court, we remand the issue for consideration by the district court.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s grant of the preliminary injunction.

. Termination letters were also sent to Glazer's Distributors of Ohio, Inc., and the Hammer Company, both Ohio distributors that appeared as plaintiffs in the action below. Those letters contained identical termination explanations, but included additional grievances specific to the underlying business relationships. Both companies have settled all claims against TWG and neither joined this appeal.

. The letters differ only in the distributor recipients designated. For convenience, we refer to the Tri-County Termination Notice.

. The Wine Distributors submitted this decision to the Court in a Federal Rule of Appellate Procedure 28(j) letter after oral arguments were held. TWG has not responded.

. The district court also noted that the cases relied upon in Schieffelin do not support its conclusion "because all of the decisions involved some manner of deficient performance by the distributor.” Id.

. Having reached this result, we need not reach the question of whether TWG's proposed termination would also violate § 1333.85(B)(2), which provides that "restructuring, other than in bankruptcy proceedings, of a manufacturer’s business organization” is also not just.

. Contrary to the dissent's suggestion, we see no indication in Mascio that (1) the likelihood of success was the only factor challenged on appeal or (2) that district courts are not required to consider each factor correctly. In any event, our holding does review all four factors and then balances them in making the determination that the district court did not abuse its discretion.

. Even if we agreed with the dissent’s well-reasoned conclusion that the district court abused its discretion in finding irreparable injury, this would not end the inquiry. As the dissent recognizes, the four factors are not preconditions and the "district court’s ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief” is a different inquiry that must be independently reviewed under a "highly deferential” abuse of discretion standard. Certified Restoration, 511 F.3d at 541.