[Cite as *Mullaji v. Mollagee*, 2020-Ohio-4618.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

SAJID MULLAJI

     Appellee

     v.

WAHEEDA MOLLAGEE

     Appellant

C.A. No.     19CA011593

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16DU080966

DECISION AND JOURNAL ENTRY

Dated: September 28, 2020

CALLAHAN, Presiding Judge.

{¶1} Appellant, Waheeda Mollagee, appeals a divorce decree entered by the Lorain County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

{¶2} Sajid Mullaji and Waheeda Mollagee married in a Muslim religious ceremony in South Africa in January 2012. After the marriage, Mr. Mullaji, who is a citizen of India, returned to the United States, where he was employed and resided on an H1-B visa. Ms. Mollagee, a citizen of South Africa, remained in her home country to complete medical training. She joined Mr. Mullaji in the United States in 2013 on an H-4 visa obtained as Mr. Mullaji's spouse. In the summer of 2013, Mr. Mullaji sought permanent resident status based on his employment, and Ms. Mollagee sought permanent resident status based on marriage. Their applications were approved in February 2014.

{¶3} On February 20, 2014, a daughter, Z.M., was born to the couple. They jointly obtained a United States passport for Z.M. several months after her birth. In December 2014, Ms. Mollagee traveled with Z.M. to visit family in South Africa. They returned to the United States in February 2015. During August 2015, Mr. Mullaji and Ms. Mollagee participated in marital counseling. Three months later, Ms. Mollagee traveled with Z.M. to South Africa for a second extended visit. Although Mr. Mullaji did not want them to make this trip, he purchased plane tickets and consented in writing to Z.M.'s entry into South Africa with one parent. Two days before their departure, the couple had an argument. The day before her departure for South Africa, Ms. Mollagee consulted an attorney, who told her that her marriage to Mr. Mullaji was not recognized in South Africa and, as a consequence, that Ohio law conferred no parental rights and responsibilities upon him. She also made a report to the police that alleged domestic violence as a result of the prior day's argument. Police took no further action on that report. While Ms. Mollagee was in South Africa, she requested Mr. Mullaji's consent to the registration of Z.M.'s birth with the South Africa government. Mr. Mullaji gave his consent. Shortly thereafter, Ms. Mollagee informed Mr. Mullaji that she was ending their marriage and that she and Z.M. would not be returning to the United States.

{¶4} On February 9, 2016, Mr. Mullaji filed a complaint for legal separation in the Lorain County Court of Common Pleas. In the complaint, he requested sole parental rights and responsibilities with respect to Z.M. On March 7, 2016, Mr. Mullaji filed an application for the return of Z.M. from South Africa under the Hague Convention on the Civil Aspects of International Child Abduction ("The Hague Convention"). Shortly thereafter, Ms. Mollagee moved to dismiss the complaint for legal separation, arguing that the trial court did not have subject matter jurisdiction because the couple's religious marriage had not been solemnized in a civil ceremony.

Consequently, Ms. Mollagee maintained, it was not a marriage as defined by the South African Marriage Act of 1961, and could not be recognized as such by an Ohio court. The trial court conducted a two-day hearing, during which each party presented expert testimony regarding the recognition of Muslim religious marriages in South Africa. In May 2016, Ms. Mollagee obtained a faskh, an annulment of the parties' marriage under Islamic law.

{¶5} On November 19, 2016, the trial court denied the motion to dismiss. Ms. Mollagee attempted to appeal that order to this Court, but that appeal was dismissed for lack of a final appealable order. Ms. Mollagee moved the trial court to reconsider its decision, but the trial court declined to do so. Mr. Mullaji moved the trial court to adopt a shared parenting plan and, on January 1, 2018, he filed an amended complaint seeking divorce. The matter was set for trial beginning on November 5, 2018. In anticipation of trial, the parties reached an agreement regarding the division of their property, leaving only the issues of parental rights and responsibilities and spousal support to be determined.

{¶6} On the same date that the trial commenced, the High Court of South Africa (Western Cape Division, Cape Town), rendered a decision on Mr. Mullaji's Hague Convention application. That decision ordered the return of Z.M. to the United States and set conditions for her return. In the event that Ms. Mollagee returned to the United States as well, those terms set forth a requirement that within one month, the parties "institute proceedings and pursue them with due diligence" to obtain an order regarding housing and related expenses, child and spousal maintenance, educational and health expenses, and parenting time consistent with terms set by the South African court. The Order provided that if Ms. Mollagee gave notice of her intention to return to the United States with Z.M., "the order for the return of [Z.M.] shall be stayed until the appropriate court in the State of Ohio, USA, has made the order referred to * * * above[.]" It also,

however, provided that the terms of support and parental rights were "[u]nless otherwise ordered by the appropriate court in Ohio." Ten months later, the South African Court issued a judgment setting forth its underlying legal conclusions regarding the status of the parties' marriage under South African law, which were not contained in the previous order.[1] Both parties requested leave to appeal the Hague Convention orders while the divorce action proceeded in the trial court. It appears that those appeals are still pending.

{¶7} On November 21, 2019, after a trial that extended for seven days over the course of almost six months, the trial court entered a divorce decree that incorporated the parties' stipulations regarding the division of property; determined that spousal support was not appropriate or reasonable; required Mr. Mullaji to pay child support; and adopted the parenting plan submitted by Mr. Mullaji, subject to several revisions that the trial court ordered sua sponte. Ms. Mollagee appealed the trial court's decision, asserting four assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED BY NOT DISMISSING [MR. MULLAJI'S] COMPLAINT AND ALL RELATED PLEADINGS PURSUANT TO CIV.R. 12(B)(1) BECAUSE THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION, AS THE PARTIES' MUSLIM RELIGIOUS CEREMONY WAS A CEREMONIAL MARRIAGE AND NOT A VALID CIVIL MARRIAGE UNDER SOUTH AFRICAN LAW.

{¶8} In her first assignment of error, Ms. Mollagee argues that the trial court erred by denying her motion to dismiss. Specifically, she has argued that the trial court lacked subject matter jurisdiction to proceed on Mr. Mullaji's complaint because the couple's ceremonial

---

[1] In doing so, the South African Court noted that its second order was being issued "somewhat belatedly as the court was under the incorrect impression that the matter had been resolved by the parties."

marriage was not recognized by South African law. This Court disagrees, but for a more fundamental reason.

{¶9} "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon it merits[.]" *Morrison v. Steiner*, 32 Ohio St.2d 86 (1972), paragraph one of the syllabus. "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of America, N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19, citing *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). *See also State v. Swiger*, 125 Ohio App.3d 456, 462 (9th Dist.1998) ("Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case."). Consequently, a motion filed pursuant to Civ.R. 12(B)(1) requires a trial court to determine whether "any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989).

{¶10} Legal separation and divorce are causes of action that are within the subject matter jurisdiction of the Lorain County Court of Common Pleas, Domestic Relations Division. *See* R.C. 3105.011(A); R.C. 2301.03(C)(1)(a). The issue of whether or not the parties' marriage was one recognized by law in South Africa is a question going to the particular facts of this case and, therefore, it does not implicate the subject matter jurisdiction of the trial court.[2] *See Kuchta* at ¶ 19; *Swiger* at 462. *Compare In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, ¶ 11; *State ex rel.*

---

[2] Throughout the trial court proceedings, the parties at various times argued their positions on whether the marriage was "valid" or "void," in apparent reliance upon *Mazzolini v. Mazzolini*, 168 Ohio St. 357 (1958), a decision that arose from a claim for annulment of a marriage between first cousins. These categories are not well-suited to the matter at hand, especially given that South African courts appear to recognize Muslim ceremonial marriages for some purposes and not others.

*DeWine v. Helms*, 9th Dist. Summit No. 28898, 2019-Ohio-604, ¶ 10. *But see Tatsing v. Njume-Tatsing*, 10th Dist. Franklin No. 16AP-827, 2017-Ohio-8460, ¶ 8; *Hussain v. Hussain*, 12th Dist. Butler No. CA2015-07-127, 2016-Ohio-3214, ¶ 12.

{¶11} Ms. Mollagee's motion to dismiss—as well as her arguments before the trial court and in this Court – were framed entirely in terms of subject matter jurisdiction.[3] The issue that she raised, however, did not affect the trial court's subject matter jurisdiction. Her first assignment of error is overruled on this basis.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY VIOLATING STATUTORY MANDATES AND CREATING ITS OWN SHARED PARENTING PLAN, WHICH CASE LAW STATES EXCEEDS THE COURT'S AUTHORITY, AND FURTHER DID NOT TAKE TESTIMONY REGARDING R.C. 3109.04'S SHARED PARENTING FACTORS.

{¶12} In her second assignment of error, Ms. Mollagee argues that the trial court erred by adopting a shared parenting plan that varied from the terms proposed by Mr. Mullaji. Husband acknowledges that the trial court erred in this respect, but urges this Court to conclude that any such error was harmless.

{¶13} R.C. 3109.04(G) provides that either or both parents to a proceeding for the allocation of parental rights and responsibilities may file a motion for shared parenting

---

[3] Ms. Mollagee's motion to dismiss was filed under Civ.R. 12(B)(1). The trial court's judgment analyzed the merits of her arguments, concluded that the parties were married because Muslim ceremonial marriages are recognized for some purposes under the evolving common law of South Africa, and denied her motion to dismiss. The trial court, however, did not reference Civ.R. 12(B)(1) or subject matter jurisdiction specifically. It is possible that the trial court considered the question with reference to Civ.R. 12(B)(6), but that question is beyond the scope of this appeal. This Court would note, however, that the trial court's analysis of the legal question presented would be similar in that context, and given the evolving nature of the legal issues involved, that analysis would lead to the conclusion that Mr. Mullaji stated a claim upon which relief could be granted.

accompanied by a proposed parenting plan. If at least one parent does so, the trial court may allocate parental rights and responsibilities to both parents and issue a shared parenting order. R.C. 3109.04(A)(2). In making this determination, the trial court must determine whether the plan that has been submitted is in the best interest of the child. R.C. 3109.04(D)(1)(a)(iii). If the trial court determines that the plan submitted is not in the best interest of the child, "the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections or may select one filed plan and order each parent to submit appropriate changes to the selected plan to meet the court's objections." *Id.* Once the trial court has done so, R.C. 3109.04(D)(1)(a)(iii) describes the process that must be followed:

> If changes to the plan or plans are submitted to meet the court's objections, and if any of the filed plans with the changes is in the best interest of the children, the court may approve the plan with the changes. If changes to the plan or plans are not submitted to meet the court's objections, or if the parents submit changes to the plan or plans to meet the court's objections but the court determines that none of the filed plans with the submitted changes is in the best interest of the children, the court may reject the portion of the parents' pleadings or deny the parents' motion or reject the portion of the parents' pleadings or deny their motions requesting shared parenting of the children and proceed as if the request or requests or the motion or motions had not been made. If the court approves a plan under this division, either as originally filed or with submitted changes, or if the court rejects the portion of the pleadings or denies the motion or motions requesting shared parenting under this division and proceeds as if the request or requests or the motion or motions had not been made, the court shall enter in the record of the case findings of fact and conclusions of law as to the reasons for the approval or the rejection or denial.

The approval of a shared parenting plan is a matter within the discretion of the trial court. R.C. 3109.04(D)(1)(b).

{¶14} This Court has concluded that "[w]hen a shared parenting plan is first adopted * * * the trial court must approve a plan submitted by one of the parties, or the court may return the plans with suggestions for modifications[,]" but "the court cannot create its own shared parenting

plan." *Carr v. Carr*, 9th Dist. Medina No. 2880-M, 1999 WL 598837, *3 (Aug.11, 1999). As we explained in an earlier case,

> The procedure which the court must follow, after it receives requests for shared parenting and shared-parenting plans from each of the parties, is set forth at R.C. 3109.04(D)(1)(a)(ii). A court may determine that one of the submitted plans is in the best interest of the children and adopt that plan verbatim. *Id.* Barring adoption of one of the submitted plans, however, a court may only make suggestions for modification of the plans to the parties. *Id.* If the parties do not make appropriate changes or if the court is not satisfied with the changes that are resubmitted following the suggestions for modification, then the court may deny the request for shared parenting of the children. *Id.* *The statute does not give the court authority to create its own shared-parenting plan. A satisfactory plan must be filed with the court for adoption; otherwise, the court will not adopt any plan. R.C. 3109.04(D)(1)(b).*

(Emphasis added.) *McClain v. McClain*, 87 Ohio App.3d 856, 857 (9th Dist.1993).

{¶15} Mr. Mullaji moved the trial court to adopt a shared parenting plan and filed a proposed plan. The trial court ordered shared parenting, but made modifications to the plan proposed by Mr. Mullaji without following the procedure described in R.C. 3109.04(D). This Court agrees that the trial court erred in doing so. Considering the circumstances of this case, however, we cannot agree with Mr. Mullaji's assertion that this error was harmless—particularly given the potential interplay between the trial court's decree and the South African Court's conditions attached to its order for return of Z.M. pursuant to the Hague Convention.

{¶16} Ms. Mollagee has also suggested that the trial court erred by failing to hear testimony specifically related to whether a shared parenting plan is in Z.M.'s best interest. Ms. Mollagee has not argued that the trial court erred by excluding any proposed testimony or by restricting the scope of the hearing. Instead, her argument appears to be that it is incumbent upon the trial court to elicit testimony bearing on the best-interests analysis, and she urges this Court to remand the matter and "require[] [the trial court] to take additional testimony, if necessary, to make

a determination under the factors of the statute." The responsibility for presentation of evidence, however, falls not to the trial court, but to the parties. *See* R.C. 2315.01(A)(3).

{¶17} Ms. Mollagee's second assignment of error is sustained to the extent that she argues that the trial court erred by revising Mr. Mullaji's proposed shared parenting plan sua sponte. The balance of her second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT[] ERRED IN ITS ATTORNEY FEE AWARD OF $150,000.00 TO [MR. MULLAJI], WHICH CONSTITUTED AN ABUSE OF DISCRETION BECAUSE IT IS UNNECESSARILY PUNITIVE AND IGNORES THE PARTIES' INCOMES.

### ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED BY DISREGARDING THE CREDIBLE AND UNCONTRADICTED EXPERT TESTIMONY OF TONI RAPHAEL IN FORMING ITS DECISION, WHICH IS PROHIBITED BY CASE LAW.

{¶18} Ms. Mollagee's third assignment of error argues that the trial court erred by awarding attorney fees to Mr. Mullaji and in calculating the amount of fees. Her fourth assignment of error argues that the trial court erred by disregarding the testimony of an expert witness with respect to issues related to the allocation of parental rights and responsibilities. In light of this Court's resolution of Ms. Mollagee's second assignment of error, her third and fourth assignments of error are premature.

### III.

{¶19} Ms. Mollagee's first assignment of error is overruled. Her second assignment of error is sustained in part, and this matter is remanded to the trial court for proceedings consistent with our resolution of her second assignment of error. Her third and fourth assignments of error are premature.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GARY J. GOTTFRIED and ALEXANDER T. KORECKY, Attorneys at Law, for Appellant.

DOUGLAS M. BRILL, Attorney at Law, for Appellant.

JONATHAN A. RICH and CHRISTOPHER R. REYNOLDS, Attorneys at Law, for Appellee.