[Cite as *State v. Harris*, 2020-Ohio-5425.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                      :

                             No. 108377

    v.                                              :

DWAYNE HARRIS, JR.,                        :

    Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** November 20, 2020

---

Cuyahoga County Court of Common Pleas
Case No. CR-18-630253-A
Application for Reopening
Motion No. 539991

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee.*

Dwayne Harris, Jr., *pro se.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} On July 16, 2020, the applicant, Dwayne Harris, Jr., pursuant to App.R. 26(B) and *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Harris*, 8th Dist. Cuyahoga No.

108377, 2020-Ohio-1497, in which the court affirmed his convictions for gross sexual imposition and kidnapping.[1] Harris now maintains that his appellate counsel was ineffective for not arguing the following: (1) the trial court erred by failing to ensure that Harris knew of his right to testify in his own defense; (2) trial counsel was ineffective for resting without ensuring that Harris had properly waived his right to testify; for failing to object to the social worker's vouching for the truthfulness of the children; for failing to investigate the validity of the detective's statement; for failing to call character witnesses; for obtaining unnecessary, unreasonable, and unwanted continuances; and for failing to move the trial judge to recuse himself; (3) Harris was denied his right to a speedy trial; (4) the trial judge was improperly assigned to the case; and (5) the trial judge abused his discretion by failing to rule on certain pretrial motions. In early August, Harris sought leave to file the following additional arguments: (6) the prosecutor introduced misleading physical evidence, and (7) trial counsel was ineffective for failing to object to the misleading physical evidence and for failing to investigate necessary physical evidence. On August 13, 2020, the state of Ohio filed its brief in opposition to all of Harris's arguments. For the following reasons, this court denies the application.

## Factual and Procedural Background

{¶ 2} In October 2016, Harris moved into the home of his girlfriend, who had three daughters. All three of the girls were less than 13 years old during the time

---

[1] The court notes the Dwayne Harris, Jr., born April 1, 1980, is not the same person as Dwayne Harris, born February 1, 1964, who is a vexatious litigator.

of the alleged incidents. The oldest daughter testified that Harris was left in charge of the girls when the mother went to work. She testified that Harris molested her in various ways, such as pulling her pants down and touching her between her legs, putting his fingers into her private part, trying to put his private part into her private part, and pulling up her shirt and bra and licking her breasts. The final incident occurred in 2018 in which Harris had ordered the girls to clean up a mess in the basement; their brother had torn up a bunch of foam that was hard to pick up. The two younger sisters went upstairs, but Harris told the oldest sister that she was not done. He pulled her over to a couch and put his hand down her pants and touched the outside of her private part. The oldest sister pulled away and ran upstairs and hid in a closet. Harris followed her upstairs and told the mother that the oldest sister ran upstairs to avoid cleaning the basement. The three of them returned to the basement where Harris began throwing the girl around. At that time, she began to cry and told her mother that Harris had been touching her. When Harris went to work the next day, the mother removed her family to her sister's house. She also sought medical attention for the girls. Subsequently, the mother and the girls talked to a social worker and a detective, and all three girls reported sexual misconduct against Harris.

{¶ 3} The grand jury indicted Harris on the following charges: (1) rape, fellatio, against the oldest sister; (2) kidnapping against the oldest sister; (3) rape, digital penetration, against the oldest sister; (4) kidnapping against the oldest sister; (5) rape, vaginal intercourse, against the oldest sister; (6) kidnapping against the

oldest sister, (7) gross sexual imposition, touched breast with mouth, against the oldest sister; (8) gross sexual imposition, touched the vaginal area, against the oldest sister; (9) kidnapping against the oldest sister; (10) gross sexual imposition against the oldest sister; (11) kidnapping against the oldest sister; (12) rape, digital penetration, against the middle sister; (13) kidnapping against the middle sister; (14) rape, digital penetration, against the middle sister; (15) kidnapping against the middle sister; (16) gross sexual imposition, touching the vaginal area, against the youngest sister; (17) kidnapping against the youngest sister; (18) gross sexual imposition touching the buttocks, against the youngest sister; and (19) kidnapping against the youngest sister.

{¶ 4}   At a bench trial, in addition to the oldest sister's testimony, the middle sister testified that Harris once kissed her on her mouth and hit her in her jaw several times.  The youngest sister testified that Harris once touched her private part, her crotch, over her clothes.  At the end of the state's case, the state voluntarily dismissed Count 8, gross sexual imposition, touching the vaginal area, against the oldest sister; Count 12, rape, the digital penetration of the middle sister; Count 13, the corresponding kidnapping count; Count 18, gross sexual imposition, touching the buttocks of the youngest sister; and Count 19, the corresponding kidnapping count.  Pursuant to the defense's Crim.R. 29 motion, the trial court dismissed Count 14, rape, digital penetration of the middle sister and Count 15, the corresponding kidnapping count.

{¶ 5}   The trial judge found Harris not guilty of Count 1, rape, fellatio, against the oldest sister; Count 2, its corresponding kidnapping count; Count 3, rape, digital penetration, against the oldest sister; Count 4, its corresponding kidnapping count; Count 5, rape, vaginal intercourse, against the oldest sister; Count 6, its corresponding kidnapping count; Count 16, gross sexual imposition against the youngest sister; and Count 17, the corresponding kidnapping count.  The trial judge found Harris guilty of Count 7, touched breast with mouth, gross sexual imposition against the oldest sister; Count 9, its corresponding kidnapping count; Count 10, gross sexual imposition, the last incident, against the oldest sister; and Count 11, its corresponding kidnapping count.

{¶ 6}   Everybody agreed that Count 7 merged with Count 9 and that Count 10 merged with Count 11.  The state elected to proceed on the gross sexual imposition charges, Counts 7 and 10.  The judge then sentenced Harris to 10 years to life on Count 10 and 3 years on Count 7, to be served concurrently.

{¶ 7}   Harris's appellate counsel argued two assignments of error:  The verdict was not supported by sufficient evidence, and the verdict was against the manifest weight of the evidence.  Harris now maintains that his appellate counsel was ineffective.

**Legal Analysis**

{¶ 8}   In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶ 9} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 10} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and

impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 11} Furthermore, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 12} Moreover, appellate review is strictly limited to the record. *The Warder, Bushnell & Glessner Co. v. Jacobs*, 58 Ohio St. 77, 50 N.E. 97 (1898). Thus, "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650, 2001-Ohio-1892, 758 N.E.2d 1130. "Clearly, declining to raise claims

without record support cannot constitute ineffective assistance of appellate counsel." *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 10.

{¶ 13} Harris's first argument is that the trial court erred by not ensuring that Harris knew of his right to testify on his own behalf. As an alternative to this argument, Harris asserts that his trial counsel was ineffective for resting the case without ensuring that Harris had properly waived his right to testify.

{¶ 14} At a pretrial, Harris asserted his innocence and his desire to prove it, but did not explicitly state he wanted to testify. When his defense counsel rested and stated, "We have no witnesses," Harris was silent. (Tr. 564.) An examination of the transcript does not show that, during trial, Harris stated he wanted to testify. Only at sentencing did Harris say he wanted to take the stand. (Tr. 603.)

{¶ 15} As to the responsibility of the judge to ensure that a defendant has waived his right to testify, the law is clear.

> The court has no obligation to inquire into whether the defendant knowingly and intelligently waived the right not to testify inherent in the privilege against compelled self-incrimination. It is primarily the responsibility of counsel, not the judge, to advise a defendant on whether or not testify, and the tactical advantages and disadvantages of each choice. For the court to discuss the choice with defendant would intrude into the client-counsel relationship * * *.

*United States v. Martinez,* 883 F.2d 750, 757 (9th Cir.1989) and *United States v. Goodwin,* 770 F.2d 631 (7th Cir.1985). The courts of Ohio have affirmed this principle. "[T]he court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred." *State v. Bey,* 6th Dist. Lucas No. L-94-003, 1997 Ohio App. LEXIS 4182 (Sept. 19, 1997) and

*State v. Morrison,* 10th Dist. Franklin No. 91AP-1326, 1993 Ohio App. LEXIS 4870 (Oct. 7, 1993).

{¶ 16} Appellate counsel was not ineffective for failing to argue that trial counsel was ineffective for not ensuring that Harris properly waived his right to testify. "The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" *State v. Winchester,* 8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12, citing *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir.1983). Moreover, the defendant's conduct provides a sufficient basis to determine whether the right to testify has been waived. A defendant's silence in the face of his attorney's decision not to call him as a witness effectively waives the right to testify on his own behalf. *Bey, supra.*

{¶ 17} Next, Harris complains that his trial counsel failed to object to the testimony of the social worker on the grounds that she vouched for the truthfulness of the children. In *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), the Supreme Court of Ohio ruled that it is improper for a witness to testify that a child victim was telling the truth or not engaging in fantasies. However, a review of the social worker's testimony shows that she did not vouch for the children's truthfulness. She testified as to what she asked the children and what she recommended for a further course of action. She said that she took what the children said at face value (Tr. 397.) The testimony was far from opining on the children's veracity, as it was in *Boston. State v. Cashin,* 10th Dist. Franklin No.

09AP-367, 2009-Ohio-6419. Moreover, this was a trial to the court, "and it is presumed that the trial judge follows the rule of evidence and renders a decision on the proper evidence." *State v. Atwater,* 8th Dist. Cuyahoga No. 107182, 2020-Ohio-484,¶ 15, and *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181. Thus, appellate counsel, in the exercise of professional judgment, properly declined to make this argument.

{¶ 18} The investigating detective interviewed the children and recorded that interview, from which a report was made. On cross-examination, defense counsel asked the detective whether he asked one of the girls whether she was telling the truth, as stated in his report. The detective then revealed that he did not write up the report, but rather told Detective Feldman whom he was training to prepare the report based on the recording. Defense counsel objected to the report because the detective did not prepare it. The prosecution offered to play the video, and the trial judge said, "That's fine." (Tr. 518-519.)

{¶ 19} From this exchange, Harris argues that his trial counsel failed to investigate Detective Feldman's statement and failed to subpoena him to establish that the arrest warrant was made in reckless disregard of the truth. This argument is meritless. The interview with the girls, recorded via video, in which they related various improper acts perpetuated on them by Harris, provided probable cause for Harris's arrest.

{¶ 20} Next, Harris argues that his trial counsel was ineffective for failing to call Latasha Evans as a character witness. He asserts that Evans was the mother's

best friend and present in the home on the day of the last incident. Furthermore, Harris claims that she was scheduled to testify, but his trial counsel told her not to come. He claims that her testimony would have changed the outcome of the verdict, but does not specify what the testimony would have been, much less where in the record the proffer was made. Without knowing what the testimony would have been, all appellate counsel could have done was speculate on what the testimony would have been. This is insufficient for making an appellate argument. *State v. Addison*, 8th Dist. Cuyahoga No. 90642, 2009-Ohio-221, *reopening disallowed*, 2009-Ohio-2704. Moreover, the "decision whether to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel." *State v. Krzywkowski,* 8th Dist. Cuyahoga Nos. 83599, 83842, 84056, 2004-Ohio-5966, ¶ 20. Accordingly, appellate counsel in the exercise of professional judgment properly declined to argue this point.

{¶ 21} Harris also claims that his appellate counsel should have argued that he was denied his right to a speedy trial, especially when he did not authorize his attorney to request or consent to any continuances. In fact, he objected to further continuances.

{¶ 22} R.C. 2945.71(c)(2) requires that the state bring a person charged with a felony to trial within 270 days after the person's arrest. Under subsection (E), each day the person is held in jail counts as three days. However, this time period may be waived, extended, or tolled under R.C. 2945.72. Subsection D provides that the

time may be extended by "[a]ny period of delay occasioned by the neglect or improper act of the accused." Similarly, any "delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused" tolls the period. R.C. 2945.72(E). Finally, subsection (H) provides that the period is tolled by "any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Thus, any continuance granted at the defendant's request tolls the period. *State v. Brelo,* 8th Dist. Cuyahoga No. 79580, 2001-Ohio-4245, and *State v. Ferrell,* 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882. The court further notes that defense counsel's actions in waiving the time period is attributable to the defendant, even if the defendant did not consent to the waiver. *State v. McBreen,* 54 Ohio St.2d 315, 376 N.E.2d 592 (1978).

{¶ 23} Harris never made bail, so each day is subject to the triple-count provisions. If he can establish that more than 90 days elapsed after allowing for all waivers and extensions, his claim may have merit. The time for speedy trial begins to run when the accused is arrested, but the actual day of arrest is not counted. *State v. Canty*, 7th Dist. Mahoning No. 08-MA-1565, 2009-Ohio-6161.

{¶ 24} Harris was arrested on June 27, 2018. Twenty days elapsed until the first pretrial on July 17, 2018. From that date until November 5, 2018, there is an unbroken series of pretrials that are continued at the request of the defendant because of ongoing discussions between defense counsel and the state. At the November 5, 2018 pretrial, trial was set for January 22, 2019, at defendant's request.

On January 22, 2019, the court considered various matters, including Harris's voluntary waiver of a jury trial. Trial started on January 23, 2019. Thus, pursuant to the law and allowing for all the continuances, only 21 days of the 90 days elapsed for speedy trial purposes. Thus, appellate counsel properly rejected this argument.

{¶ 25} Harris endeavors to eliminate the "continuances at defendant's request" by arguing that he objected to such continuances and denied consent to them. On August 30, 2018, he filed a pro se motion to deny consent to any continuances and another pro se filing objecting to all continuances. Therefore, he argues that his trial counsel ignored his instructions, frustrated his desire for a speedy trial, and entered into unreasonable continuances. Recalculating the time without the continuances would show that he was denied his right to a speedy trial.

{¶ 26} The courts of Ohio have held that defense counsel's request of continuances bind the defendant even when the defendant has informed the attorney and the court that he would not assent to such delays. *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72; *State v. Kelly,* 8th Dist. Cuyahoga No. 102413, 2015-Ohio-5272; and *State v. Westly,* 8th Dist. Cuyahoga No. 97650, 2013-Ohio-1654. Only if the defendant can show that the continuances were unreasonable might a court consider disallowing them for purposes of speedy trial calculation. In the present case, the court notes that Harris faced 19 serious counts, some of which carried life sentences, that DNA testing needed to be done, and that supplementary discovery was filed from September 2018, through the eve of trial on January 22, 2019. Harris does not support his contention that the continuances

were excessive or unreasonable beyond his mere statements. Following the admonition of the Supreme Court, this court will not second-guess appellate counsel's decision not to argue Harris's speedy trial contentions.

{¶ 27} With regard to the trial judge assigned to this case, the record reflects that in *State v. Harris,* Cuyahoga C.P. No. CR-13-576517-A, Harris pled guilty to drug trafficking, drug possession, and possession of criminal tools, before the same trial judge as the instant case. In January 2014, the trial judge sentenced Harris to two years of community control. By his own admission, Harris violated community control, and in May 2014, the trial judge issued a capias for him. Harris was taken into custody in February 2018. At the probation department's request, the trial judge on March 9, 2018, terminated Harris's probation and ordered him released. The docket of CR-13-576517-A shows that matters concerning court costs continued into at least June 2020. On July 10, 2018, the same trial judge was assigned manually to the instant case.

{¶ 28} From this, Harris proposes several more arguments. First, his trial counsel "was ineffective for failing to have the judge recused from the case due to the probability of confirmation bias and mistrust from when Mr. Harris absconded [the judge's] probation in previous case * * *." (Pg. 6 of the July 16, 2020 application.) Second, appellate counsel should have argued that the trial judge was improperly assigned to the instant case. As an alternative to this argument, he adds that his appellate counsel should have argued the ineffectiveness of trial counsel for allowing a bench trial pursuant to an improper assignment. Loc.R. 30.0 Court of

Common Pleas of Cuyahoga County, General Division; Sup.R. 36.01(B); and Sup.R. 36.011(C)(1)(b) provide that a case shall be assigned to a judge by lot unless the case involved a person who is currently on probation before that judge. Harris concludes that because he was not on probation before the judge, it was improper to assign his case manually to the judge.

{¶ 29} The state counters by noting that although Harris's probation had ended, his earlier case was still active because of court costs and by questioning whether the scope of the assignment rules extends to "active" cases with outstanding court costs. Nevertheless, assuming arguendo that the instant case was improperly assigned to the judge, it is difficult to discern that the judge held any animus against Harris. The judge ended Harris's community control and released him. The judge granted acquittal per Crim.R. 29 on two counts and found Harris not guilty on eight counts. He also imposed concurrent sentences.

{¶ 30} Moreover, the Supreme Court of Ohio has ruled that if the trial court has subject-matter jurisdiction over a case, an improper assignment renders the verdict voidable, not void. The failure to object at any time during the proceedings waives the issue for purposes of appellate review. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 16. This court affirmed this principle in *State v. Judd,* 8th Dist. Cuyahoga No. 89278, 2007-Ohio-6811. Harris has not indicated where in the record he objected to the judge's assignment. Nor has this court found such an objection. Indeed, Harris waived his right to a jury trial, consented to the judge hearing the case, and stated he was comfortable with doing that. (Tr. 23.)

{¶ 31} It was trial counsel's apparent strategy to try the case to the judge instead of a jury. It is understandable that appellate counsel would not want to raise the issue of improper assignment indirectly through the lens of ineffective assistance of trial counsel. He would have to establish that that the strategy was wrong. "Debatable strategic and tactical decisions may not form the basis of a claim of ineffective assistance of counsel, even if a better strategy had been available." *State v. Krzywkowski,* 8th Dist. Cuyahoga Nos. 83599, 83842, 84056, 2004-Ohio-5966, ¶ 20. Following the admonition of the Supreme Court, this court will not second-guess appellate counsel's decision not to argue issues that are not preserved in the record, that have a questionable basis, and for which it is difficult to discern prejudice.

{¶ 32} Harris also asserts that his appellate counsel should have argued that the trial court erred in refusing to rule on various motions during the course of the case. He invokes Crim.R. 12 that motions shall be determined before trial. Harris specifically refers to three pro se motions: (1) his motion to object to all continuances, (2) his motion to dismiss due to speedy trial violations, and (3) his motion for a new trial. However, Harris was represented by counsel when he "filed" these motions. The Supreme Court of Ohio has clarified that hybrid representation is not permitted in Ohio. A defendant represented by counsel, may not be co-counsel in his own defense. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227. The corollary to this hybrid representation rule is that "when counsel represents a criminal defendant, a trial court may not entertain defendant's

pro se motion." *State v. Mongo,* 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 14.

{¶ 33} The children's mother took the three sisters to the hospital the day following the final incident. The testimony at trial shows that the oldest sister was wearing different underpants that day than what she wore during the final incident. Because of the possibility of contact transmission, the underpants the oldest sister wore to the hospital were tested for DNA. The swab taken from the crotch area of those underpants showed a mixture of male DNA from two males. However, there was insufficient DNA to identify any particular man as a contributor. The underpants the oldest sister wore during the final incident could not be found and were not tested. During closing argument, the prosecutor stated that Harris could be a contributor to the DNA found on the underpants the oldest sister wore to the hospital, given the testimony that he had touched the oldest sister's vaginal area the previous day.

{¶ 34} From this Harris argues that because the DNA did not positively identify him as a contributor, it was improper for the prosecutor to present misleading evidence and to indulge in innuendo that the male DNA could be his. He further argues that his trial counsel should have moved to suppress this DNA test and was ineffective for failing to investigate the original pair of underpants and have those tested for DNA.

{¶ 35} The DNA test showing male DNA from the crotch of the oldest sister's underpants worn on the day after the last incident was relevant evidence under

Evid.R. 401. It made the allegation that Harris had touched the oldest sister's vaginal area more probable, even if it could not identify him specifically. The testimony was clear about how the DNA could have been transferred. The testimony was clear about what it was and what it was not. The prosecutor did not present false or misleading evidence and did not address it in a misleading manner during closing argument. Moreover, in a bench trial, the trial judge is presumed to follow the rules of evidence and decide the case on the proper evidence. *Atwater, supra,* ¶ 15. Appellate counsel in the proper exercise of professional judgment could decline not to argue this issue.

{¶ 36} Harris's arguments that his trial counsel was ineffective for not obtaining and then testing the underpants the oldest sister wore the day of the final incident are also unfounded. A trial counsel's decision on what to investigate and what not to investigate are strategic and tactical decisions, weighing the possibility that such an investigation might uncover evidence that further inculpates the defendant. Moreover, the state was unable to locate the underpants. It is doubtful that defense counsel could have done so.

{¶ 37} Accordingly, this court denies the application to reopen.

_____

MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR